# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 5:14-cr-00318 |
| ) | |
| DOUGLAS G. WILLIAMS, ) | HON. VICKI MILES-LaGRANGE |
| ) | |
| Defendant. ) | |

## TRIAL BRIEF OF UNITED STATES

Comes now the United States of America, by and through its undersigned attorneys, and hereby submits this Trial Brief to address certain evidentiary and other issues it anticipates will arise at trial, in order to assist the Court in addressing those issues quickly and efficiently as they arise during trial.

**I.    Factual Background**

The Indictment charges defendant Douglas G. Williams with two counts of engaging in a scheme to defraud the United States through use of the mails, in violation of 18 U.S.C. § 1341, and three counts of witness tampering, in violation of 18 U.S.C. § 1512(b), arising from his deliberate efforts to help two undercover agents lie to federal investigators about criminal activity without being detected by polygraph tests. Defendant, a former law enforcement officer, owned an Internet based business called Polygraph.com, through which he marketed and sold training materials and services that he advertised would enable clients to pass polygraph tests – "nervous or not – lying or not – no matter what!"[1] In addition to training manuals, online videos, and DVDs, defendant sold in-person, confidential, "one-on-one" polygraph countermeasures training sessions. During these sessions, which included administering practice polygraph tests

---

[1] At some point after the second undercover operation, defendant removed the "lying or not" advertisement from the polygraph.com website.

and providing performance critiques, defendant coached clients how to pass polygraph tests even if they were lying. In a recorded conversation with an undercover agent, defendant stated, "[i]t doesn't matter whether you're lying, whether you're telling the truth, whether you intend to lie, whether you don't know a lie from the truth or whether you're a psychopath or what, any of that shit, okay?" Op. 2, 2/21/13.   Knowing that this undercover agent intended to lie to a federal investigator conducting a polygraph test, defendant assured him, "it's impossible for you to fuck [the polygraph test] up if you do what I tell you to do." *Id.* In a conversation with a different undercover agent, defendant boasted, "every person who's convicted of any type of sexual offense in the United States has to take a polygraph test every six months to stay out of jail, so they're willing to you know, line up three deep to get trained to make sure they can pass the damn thing." Op. 1, Call No. 2, 10/15/12.

At trial, the government will present evidence—including audio and video recordings—of two such sessions in which defendant knowingly trained undercover agents how to lie about past criminal acts during polygraph tests that defendant understood would be administered by federal investigators conducting a criminal investigation and pre-employment suitability check for a sensitive law enforcement position. The undercover agents ("UCs"), both employees of the Customs and Border Protection, Office of Inspector General ("CBP-IA"), posed as law enforcement officers who had committed serious crimes—drug smuggling and engaging in a sex act with a detained minor—and wanted help concealing that information during polygraph tests. Both UCs told defendant about their criminal activity in detail and explained their intention to lie about their crimes. Knowing this, defendant accepted payment from both UCs in return for training them how to lie to polygraph examiners without being detected. Defendant told UC2, for example, that "I [defendant] will get you ready [for the polygraph test]. You can tell anything you want to tell, don't tell me anything that will disqualify you and I can train you how

to pass if you're lying your ass off, so don't worry about that fucking bullshit."[2] Op. 2, Call No. 3, 2/7/13.  Defendant added, "I don't give a damn if you're the biggest heroin dealer in the fucking United States." Op. 2, 2/21/13.

UC1, posing as a CBP Agent under criminal investigation by the Department of Homeland Security for drug smuggling, told defendant during the in-person training that he had knowingly allowed drugs to be smuggled into the U.S. on four separate occasions. UC2, posing as a deputy sheriff who was applying for a CBP Border Patrol Agent position, told defendant that he had smuggled drugs into a local jail while employed as a correctional officer and that he had engaged in a sexual act with a fourteen-year-old girl who was in his custody while he was on duty as a deputy sheriff. UC1 purportedly had to take a polygraph as part of DHS's criminal investigation, and UC2 purportedly had to take a pre-employment polygraph examination as part of a suitability determination and security background investigation by CBP.

During both operations, the UCs explicitly told defendant that they could not keep or obtain federal employment unless he (defendant) helped them successfully lie about their crimes during their respective polygraph examinations. Despite repeatedly being told by the UCs that they intended to lie to federal investigators about their prior criminal conduct, defendant willingly trained both UCs how to pass their respective polygraphs through deception, showing both how to produce truthful polygraph results while making false statements.

---

[2] After UC1 revealed details about his purported drug smuggling activities to defendant over email, defendant expressed concern about whether he could trust UC1 "to be smart enough to keep [his] damn mouth shut . . . ." Op. 1, Call No. 4, 10/17/12.  Defendant admonished UC1 not to reveal so much information to him:

> I tell you: "Look, just, I'm working under the assumption that you're telling the truth." See, that protects me. That way I am just teaching an honest, truthful person . . . You don't have to turn around and say, "yeah, like I told you, I'm a lying son of a bitch." What the fuck was the reason for that, unless you wanted it on record that I was knowingly teaching someone how to lie and cheat . . . ?

*Id.*

In addition to the undercover operations, the government will present evidence of defendant's willingness to train another individual to pass a polygraph examination even though she intended to lie. On Tuesday, February 5, 2013, approximately two weeks prior to UC2's in-person training with defendant, defendant communicated with an individual over email about polygraph countermeasures training. The woman explained to defendant in her email that, despite past problems, she wanted to become a police officer. However, she had heard that in order to do so, she would need to pass a polygraph examination. In asking defendant for help, she stated that "I know I will have to lie but I want to pass [the polygraph]." Defendant responded later that day that he was able to help, instructing her to "[g]et the manual and video/DVD, look them over a few times, then call or email me with any questions – I'll get you ready."

## II.     Legal Issues

The charges in the indictment require the government to prove, essentially, that defendant's efforts to train UC1 and UC2 to lie to the government during polygraph tests defrauded the federal government and were attempts to corruptly persuade witnesses to conceal material facts and make false statements in federal proceedings. All indications from the defendant, however, suggest that rather than engage the merits of whether he defrauded the federal government and tampered with witnesses in federal investigations, he would like to turn this into a trial about the validity of polygraph tests. For example, defendant claimed to *The New York Times Magazine* that he was indicted for "exposing the [polygraph's] fallibility." Malia Wollan, How to Beat a Polygraph Test, New York Times Magazine, April 10, 2015, http://mobile.nytimes.com/2015/04/12/magazine/how-to-beat-a-polygraph-test.html?_r=2&. He has expressed the same sentiment in blog posts and in a book he authored and recently revised,

entitled, *From Cop to Crusader: The story of my fight against the dangerous myth of "lie detector"* (2nd ed. 2014). As is clear from the indictment, however, this case has nothing to do with the validity of polygraph examinations. Whether the polygraph is reliable has no bearing on the elements of any of the offenses charged in the Indictment. The question of whether a polygraph is valid, reliable, or even wise, is irrelevant to the questions for the jury – that is, whether defendant engaged in a scheme to defraud the federal government and attempted to persuade UC1 and UC2 to conceal material facts and make false statements. As such, evidence concerning the validity of the polygraph and related matters has no place in this case and should not be admitted. As explained below, such evidence would simply invite an impermissible nullification or entrapment defense and otherwise confuse the jury.

      A.      **Evidence regarding jury nullification and entrapment**

           1.      **Jury Nullification**

This case does not involve the reliability of polygraph examinations. It involves direct efforts to persuade and assist others to lie and conceal facts regarding serious criminal conduct. Nonetheless, the government anticipates that the defendant may seek improper jury nullification, either implicitly or explicitly. For instance, defendant may argue that: (1) the government has singled him out for prosecution because he is the loudest advocate against the use of polygraph examinations[3]; (2) the First Amendment excuses defendant's tampering with and obstruction of government-mandated polygraph examinations; and (3) the fact that polygraph results are not admissible at trial, or that he believes they are inherently unreliable, should have some bearing on his guilt in the current prosecution. All such arguments are irrelevant and misleading and therefore should be excluded because they encourage improper jury nullification.

---

[3] Defendant claims that he was indicted "to punish and silence [him] because [he has] the audacity to protest the use of the polygraph." Martin Kaste, Trial of Polygraph Critic Renews Debate Over Tests' Accuracy, N.P.R., January 2, 2015.

Notwithstanding the defendant's likely interest in making these arguments—in whatever form they may arise—the Tenth Circuit, consistent with federal court practice, routinely disavows jury nullification arguments. *See United States v. Gonzalez*, 596 F.3d 1228, 1238 (10th Cir. 2010) ("[W]e disapprove of the encouragement of jury nullification.") (referencing *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.")); *United States v. Rith*, 164 F.3d 1323, 1338 (10th Cir. 1999) ("To the extent the defendant's appeal seeks to require courts to facilitate jury nullification, the law is clear: a criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law."); *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) ("[T]here is no right to jury nullification.") (referencing *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (stating that "the power of juries to 'nullify' or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent") and *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (ruling that a defendant is not entitled to jury nullification instructions)).

In particular, because the jury enjoys no right to nullify criminal laws, the defense may not present evidence that is irrelevant for any purpose other than to encourage nullification. *See United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995). Per Federal Rule of Evidence 401, discussed in more detail below, evidence about the defendant's First Amendment rights or the validity of polygraph evidence and the defendant's own crusade against them would be irrelevant, confusing, and a waste of time. Because materially irrelevant to any issue in the case, testimony along these lines could have no purpose other than to encourage jury nullification and

should therefore be excluded. *See id.*; *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("Because the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential nullification is no basis for admitting otherwise irrelevant evidence.").

### 2. Entrapment

The government anticipates that the defendant may try to present an entrapment defense because the charges in this case stem from the defendant's statements and actions during undercover operations. The facts do not support this defense and thus the defendant should be precluded from introducing it.

To establish an entrapment defense, "the government agents must have *induced* the defendant to commit the offense; and second, the defendant must not have been otherwise *predisposed* to commit the offense, given the opportunity." *United States v. Yarbrough*, 527 F.3d 1092, 1099 (10th Cir. 2008) (quoting *United States v. Nguyen*, 413 F.3d 1170, 1178 (10th Cir. 2005)). Before the defendant can raise the issue of entrapment in front of a jury, he bears the burden of producing "sufficient evidence from which a reasonable jury could find entrapment." *United States v. Vincent*, 611 F.3d 1246, 1250 (10th Cir. 2010) (quoting *United States v. Scull*, 321 F.3d 1270, 1275 (10th Cir. 2003)); *see also United States v. Ortiz*, 804 F.2d 1161, 1165-66 (10th Cir. 1986) ("If a defendant can point to evidence of both inducement and lack of predisposition, then the trial court must determine whether the evidence amounts to a triable issue. The defendant is entitled to present the defense to the jury only if he can identify evidence 'from which a reasonable juror *could* derive a reasonable doubt as to the origin of criminal intent' . . . . The evidence must create a genuine factual issue that properly can be resolved only by a jury as the finder of fact.'") (emphasis in original) (internal citations omitted).

In order to meet the element of inducement, it is not enough for a defendant to show that the government provided him with an opportunity to commit the crime. *Yarbrough*, 527 F.3d at 1100; *Vincent*, 611 F.3d at 1250 (citing *United States v. Ortiz*, 804 F.2d 1161, 1165 (10th Cir. 1986)) (it is not enough that "the government initiated the contact with the defendant, proposed the crime, or solicited or requested the defendant to engage in criminal conduct. . . ."). Moreover, the Tenth Circuit has recognized the necessity and propriety of sting operations, such as the one in which the defendant participated. *See, e.g.*, *Vincent*, 611 F.3d at 1250 ("[I]t has long been recognized that government infiltration of drug enterprises…by using deceit and offering things of value, is vital to law enforcement's ability to thwart or at least disrupt" criminal behavior) (referencing *United States v. Russell*, 411 U.S. 423, 432 (1973)). There is no evidence here that law enforcement tried to threaten, coerce, plead with, or persuade the defendant to engage in witness tampering. Evidence will show that the defendant advertised his services to customers who planned to take government-mandated polygraph examinations. In fact, the defendant's website advertised his polygraph training services to customers whether those individuals were "lying or not." In response to this advertisement, agents posed as potential clients and provided the defendant with an opportunity to engage in criminal commercial transactions. There was no need to induce the defendant in any way; this transaction was of a type which he advertised and in which he regularly engaged.

The second prong of the entrapment defense requires that the defendant have had a lack of predisposition to commit the offense. *See United States v. Dyke*, 718 F.3d 1282, 1291 (10th Cir. 2013). To assess predisposition, the Court should look to the defendant's inclination to involve himself in the illegal activity, evidenced by this "desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his

demonstrated knowledge or experience in the criminal activity under investigation." *Id.* at 1292 (quoting *United States v. Fadel*, 844 F.2d 1425, 1433 (10th Cir. 1988)). Inferences about the defendant's predisposition may be made based on events that occurred before the defendant and investigating officers even met. *See Nguyen*, 413 F.3d at 1178 (quoting *United States v. Garcia*, 182 F.3d 1165, 1168 (10th Cir. 1999)). Here, defendant Williams advertised his eagerness and willingness to engage in witness tampering long before the government's agents approached him.[4] He also readily agreed to train the undercover agents in exchange for money – even after he knew of their prior misconduct and their intention to lie. Thus, defendant Williams may not make a successful case for entrapment.

Based on the foregoing, the Court should prohibit the defendant from presenting any evidence, making any argument, or asking any questions regarding the government's alleged selective prosecution, jury nullification, or entrapment.

### B. Testimony and questioning about validity of polygraphs should not be permitted

Defendant should not be permitted to present testimony about the validity of polygraphs. It is clear from defendant's writings and video and television appearances that he believes himself to be engaged in a personal fight against the use of polygraphs.[5] Therefore, the government anticipates that he may seek to introduce evidence about the validity of polygraph examinations, although it has no bearing on his innocence or guilt. Evidence is only admissible if it is relevant, i.e., it has a tendency "to make a material fact 'more or less probable than it would be without the evidence.'" Fed. R. Evid. 402; *United States v. Jones*, 768 F.3d 1096,

---

[4] Prior to the undercover operations, the defendant's website—polygraph.com—claimed that the defendant would teach customers to pass a polygraph "nervous or not – lying or not – no matter what!"

[5] For example, in his book, *From Cop to Crusader: The story of my fight against the dangerous myth of "lie detector"*, defendant explains that he has fought a 40 year battle "against the industry that utilizes the insidious, abusive and intrusive Orwellian instrument of torture called the 'Lie Detector.'" Doug Williams, *From Cop to Crusader: The story of my fight against the dangerous myth of "lie detector"* (2nd ed. 2014).

1103 (10th Cir. 2014) (quoting *United States v. Condrin*, 473 F.3d 1283, 1285 (10th Cir. 2007) (quoting Fed. R. Evid. 401)).

The determination about whether a fact is "material" is made by looking to the substantive law in the case. *Jones*, 768 F.3d at 1285 (referencing *United States v. Shomo*, 786 F.2d 981, 985 (10th Cir. 1986)). In this case, the materially relevant issues are that: (1) the defendant's "action was done voluntarily and intentionally to bring about false or misleading testimony or to prevent testimony with the hope or expectation of some benefit to . . . another person," *United States v. Weiss*, 630 F.3d 1263, 1273-74 (10th Cir. 2010) (quoting *United States v. Baldridge*, 559 F.3d 1126, 1143 (10th Cir. 2009); *see* 18 U.S.C. § 1512(b), and (2) defendant devised or intended to devise a scheme to defraud, and that the use of the mails was closely related to the scheme, in that the defendant either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme.

Regardless of what investigatory tool is being used—or how it functions, or whether it is reliable—the salient issues here are whether the defendant intended to bring about false or misleading testimony, or prevent testimony, and/or devised or intended to devise a scheme to defraud the federal government, and that he used or caused the mails to be used in an attempt to execute or carry out the scheme. He is not charged with undermining the use of polygraphs. He is charged with fraud and witness tampering for assisting witnesses in lying to federal investigators. The defendant undertook two trainings of government agents posing as customers, and the point of the training was to teach the agents to conceal true testimony and offer false representations in polygraph examinations to federal authorities. In doing so, he had the agents send money through the mail to pay for the trainings. The defendant's opinion about the validity of polygraph examinations is simply beside the point; it has nothing to do with whether he

engaged in fraud and assisted others to lie or mislead. Any evidence or argument concerning the validity of the polygraph should therefore be excluded as irrelevant.

### C. Evidence or argument regarding prior good acts or "clean" criminal record

The defendant should not be permitted to present evidence or argument to the jury regarding his prior good acts or lack of a criminal record. The government recognizes that the defendant may have clients who did not use his services to manipulate the government's polygraph screening procedures. However, the defendant should not be permitted to use this line of testimony, or any other, to admit extrinsic evidence of specific instances of good conduct. Rather, in advancing his argument or offering evidence, the defendant must comply with the rules governing admission of character evidence of an accused.

#### 1. Specific instances of prior good conduct are inadmissible to prove conformance therewith

Federal Rule of Evidence 405 generally controls the means by which a defendant may offer evidence of a character trait. Under this rule, the defendant's relevant character traits may only be elicited through witness testimony concerning the witness's opinion of, or knowledge of the defendant's reputation for, an identified character trait. The defendant may not introduce evidence of specific instances of his good character. *See* Fed. R. Evid. 405; *see, e.g.*, *Michaelson v. United States*, 335 U.S. 469, 477 (1948); *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992) (citing *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986)); *United States v. Ballou*, No. CR 14-2579 JB, 2014 WL 6065639, at *22 (D.N.M. Oct. 16, 2014) ("The manner of introducing character evidence . . . is limited to testimony about the person's reputation for having a certain character trait or the witness's opinion of the extent to which the person possesses that trait; the trait may not be proven or illustrated to the jury with specific examples of the person's conduct in conformity with said trait."). Here, evidence about prior instances in

which the defendant did not break the law would be specific instance testimony, which Rule 405 explicitly excludes. This Court should therefore exclude it as inappropriate to the determination of whether the defendant broke the law on other occasions.

### 2. Evidence of defendant's "clean" criminal record

The same reasoning applies to the defendant's criminal record. Just as evidence of a defendant's "bad record" is generally not admissible at trial, evidence of a defendant's "clean record" should be excluded pursuant to Federal Rules of Evidence 401, 403, and 405. *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987) (finding no abuse of discretion where trial court precluded "general evidence of an absence of criminal conduct"); *Gov't of the Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) (noting discretion held by trial court and finding no error in trial court's exclusion of evidence that defendant had no prior arrests).[6] The government thus requests that the Court preclude the defendant from arguing, or eliciting evidence regarding, the defendant's lack of convictions or prior arrests.

---

[6] In making this argument, the government is in no way challenging the right of defendants to present properly admissible character evidence pursuant to Federal Rule of Evidence 404(a)(1).

**WHEREFORE**, the Government hopes that this Trial Brief will assist the Court in anticipating the trial issues described above, put defendant on fair notice of those issues, and best prepare all parties for trial.

In Oklahoma City, Oklahoma, this 4th day of May, 2015.

                                        RAYMOND HULSER
                                      Acting Chief, Public Integrity Section

                                      <u>/s/ Brian K. Kidd</u>
                                      Brian K. Kidd
                                      Heidi Boutros Gesch
                                      Trial Attorneys
                                      U.S. Department of Justice
                                      Criminal Division, Public Integrity Section
                                      1400 New York Ave., NW
                                      Washington, DC 20005

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing United States' Trial Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant.

/s/ Brian K. Kidd
Brian K. Kidd
Trial Attorney