IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 5:14-cr-00318 |
| ) | |
| DOUGLAS G. WILLIAMS, ) | HON. VICKI MILES-LaGRANGE |
| ) | |
| Defendant. ) | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

Defendant Douglas G. Williams is scheduled to be sentenced on September 22, 2015, having pleaded guilty on the second day of trial to two counts of mail fraud, in violation of 18 U.S.C. § 1341, and three counts of witness tampering, in violation of 18 U.S.C. § 1512(b). These charges arose out of defendant's deliberate efforts to teach—and indeed, encourage—two customers (who, unbeknownst to him, were undercover agents) to lie to federal investigators about their past criminal activity without indicating deception on polygraph tests. For the reasons set forth below, the government respectfully recommends that the Court impose a custodial sentence within the Sentencing Guidelines Range of 24 to 30 months.

### I.   BACKGROUND AND OFFENSE CONDUCT

Defendant, a former law enforcement officer, owned an Internet-based business called Polygraph.com, through which he marketed and sold training materials and services that he advertised would enable clients to pass polygraph examinations "nervous or not – lying or not – no matter what!" In addition to training manuals and DVDs, defendant sold in-person, confidential, "one-on-one" polygraph countermeasures training sessions. During these sessions, defendant taught clients how to pass polygraph tests even if they were lying. Not only did defendant advertise on his website that he would train people to pass polygraph examinations

1

whether they were lying or not[1], he repeatedly and emphatically told undercover agents ("UCs") who expressed concerns about revealing their past crimes that they could lie to investigators and still pass their polygraph examinations as long as they followed his instructions. In a recorded conversation, defendant told one of the undercover agents, "[i]t doesn't matter whether you're lying, whether you're telling the truth, whether you intend to lie, whether you don't know a lie from the truth or whether you're a psychopath or what, any of that shit, okay?" Op. 2, 2/21/13. Knowing that this undercover agent intended to lie to a federal investigator administering a polygraph test, defendant assured him, "it's impossible for you to fuck [the polygraph test] up if you do what I tell you to do." *Id.*

At trial, the government presented (or was prepared to present, had the trial continued) evidence that defendant knowingly trained two UCs how to lie about past criminal conduct during federally-administered polygraph tests. The UCs, who were both employees of Customs and Border Protection, Internal Affairs ("CBP-IA"), posed as law enforcement officers who had committed serious crimes—drug smuggling and engaging in a sex act with a detained minor—and wanted help concealing that information during polygraph tests by federal agencies.

Both UCs told defendant about their criminal activity in detail and explained their desire to hide their crimes from the investigating agencies. UC1, posing as a CBP Inspector under criminal investigation by the Department of Homeland Security ("DHS") for drug trafficking, told defendant during the in-person training that he had knowingly allowed drugs to be smuggled into the U.S. on four separate occasions. UC2, posing as a deputy sheriff who was applying for a CBP

---

[1] At some point after the second undercover operation, defendant removed the "lying or not" language from Polygraph.com's home page, but continued to offer his training materials and services through the website. After trial, the polygraph.com website was temporarily taken down; it is now back online in a modified form, appearing to no longer offer one-on-one training sessions.

Border Patrol Agent position, told defendant that he had smuggled drugs into a local jail while employed as a correctional officer and that he had engaged in a sexual act with a fourteen-year-old girl who was in his custody while he was on duty as a deputy sheriff. UC1 purportedly had to take a polygraph as part of a criminal investigation by DHS, and UC2 purportedly had to take a pre-employment polygraph examination as part of a suitability determination and security background investigation by CBP.

During both operations, the UCs made it clear to defendant that they could not keep or obtain federal employment unless he helped them lie about their crimes during their respective polygraph examinations without getting caught. Knowing of the UCs' intent to lie to federal investigators in order to get or keep federal law enforcement positions, defendant willingly trained them how to provide false responses to polygraphers' questions and still pass. As part of the training, defendant administered multiple practice polygraph tests to the UCs, showing them that, using his techniques, they could produce truthful polygraph charts while making false statements to hide their past crimes.

In addition to showing the UCs the truthful charts they produced, defendant repeatedly assured the UCs that, using his training, they would be able to lie to polygraph examiners and conceal their criminal conduct without being detected. For example, defendant told UC2, "I [defendant] will get you ready [for the polygraph test]. You can tell anything you want to tell, don't tell me anything that will disqualify you and I can train you how to pass if you're lying your ass off, so don't worry about that fucking bullshit."[2] Op. 2, Call No. 3, 2/7/13. Showing complete

---

[2] After UC1 stated his intention to lie to federal investigators in an email to defendant, defendant expressed concern about whether he could trust UC1 "to be smart enough to keep [his] damn mouth shut . . . ." Op. 1, Call No. 4, 10/17/12 (Gov. Exh. US103). Defendant admonished UC1 not to reveal so much information to him:

disregard for the seriousness of the conduct the UC sought to hide, defendant later told UC2, "I don't give a damn if you're the biggest heroin dealer in the fucking United States." Op. 2, 2/21/13.

In addition to evidence of the undercover operations, the government presented evidence of defendant's willingness to train another individual (who was not a UC) to pass a polygraph examination even though she intended to lie. *See* Emails between Douglas G. Williams and Person A (Gov. Exh. US301). On Tuesday, February 5, 2013, approximately two weeks prior to UC2's in-person training with defendant, defendant communicated with an individual over email about polygraph countermeasures training. The woman explained to defendant in her email that, despite past problems, she wanted to become a police officer. However, she had heard that in order to do so, she would need to pass a polygraph examination. In asking defendant for help, she stated that "I know I will have to lie but I want to pass [the polygraph]." Defendant responded later that day that he was able to help, instructing her to "[g]et the manual and video/DVD, look them over a few times, then call or email me with any questions – I'll get you ready."

## II.     DEFENDANT'S CRIMES MERIT A GUIDELINE SENTENCE

### a.  Sentencing Guidelines Calculation

The Government agrees with the calculation of the offense level in the Presentence Investigation Report, including the adjustment made pursuant to United States Sentencing Guidelines § 3B1.3 (Adjustment for Role in the Offense – Special Skill). Defendant has a base

---

> I tell you: "Look, just, I'm working under the assumption that you're telling the truth." See, that protects me. That way I am just teaching an honest, truthful person . . . You don't have to turn around and say, "yeah, like I told you, I'm a lying son of a bitch." What the fuck was the reason for that, unless you wanted it on record that I was knowingly teaching someone how to lie and cheat . . . ?

*Id.*

4

offense level of 14 for the witness tampering counts.  That level is increased by two points for defendant's use of his specialized training and experience with polygraph examinations to facilitate the commission of the offenses.  *See* U.S.S.G. § 3B1.3.[3]  It is further increased by one point due to the grouping of the offenses.  *See* U.S.S.G. § 3D1.4.  Accordingly, the defendant's total offense level is 17, which results in a sentencing guidelines range of 24 to 30 months of incarceration.

### b. Section 3553(a) Factors

When fashioning a sentence, courts should consider, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, provide just punishment, and adequately deter criminal conduct; (3) the Sentencing Guidelines and related policy statements; and (4) the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a).  In this case, these factors support a sentence within the Sentencing Guidelines Range of 24 to 30 months' imprisonment.

In committing the charged offenses, defendant not only took actions to obstruct federal criminal and pre-employment investigations, but he also willingly undermined the safety and the security of the United States in the process.  As a former law enforcement officer, defendant understood the importance of having upright, law-abiding citizens in sensitive law enforcement positions, especially positions protecting this nation's borders.  Notwithstanding this, defendant attempted to teach an admitted drug trafficker to lie to avoid criminal prosecution and keep his job

---

[3] The special skill enhancement may be applied even when the skill was not acquired through formalized education or training; it is sufficient simply for the defendant to possess a skill that is not possessed by members of the general public.  *See United States v. Gandy*, 36 F.3d 912, 914 -915 (10th Cir. 1994) ("We also recognize that a defendant need not have completed formalized educational or licensing requirements in order to possess a special skill. Rather, a defendant's special skill can also be derived from experience or from self-teaching.").

as an Inspector at the airport and to teach an admitted drug dealer and child molester to lie to get a position as a Customs and Border Patrol agent. The severity and nature of defendant's conduct, which could have put our country and its citizens at serious risk, sets this case apart from other obstruction of justice and wire fraud cases.

Further, defendant's scheme—defrauding the United States government so that he could line his own pockets—was both premeditated and carefully executed to avoid detection by law enforcement. Defendant's website solicited business from those being polygraphed by federal agencies, including agencies responsible for protecting the United States. In fact, the website explicitly mentioned several such agencies, including NSA (National Security Agency), CIA (Central Intelligence Agency), DHS (Department of Homeland Security), and FBI (Federal Bureau of Investigation), to name a few. While defendant openly advertised that he would provide training to people whether they were "lying or not," the evidence at trial showed that defendant went to great lengths to avoid creating a "paper trail" that would show he was knowingly training people to lie. When UC1 sent defendant an email, putting it in writing that he intended to lie during his polygraph examination, defendant became suspicious that UC1 was law enforcement and initially backed out to avoid the risk of getting caught. However, he quickly reversed course, offering to train UC1 if he changed his name, changed his phone number, and told defendant that he was just nervous about taking the polygraph. Although defendant eventually trusted UC1 enough to abandon some of those requirements, he still requested payment in a form that he (defendant) said was difficult for law enforcement to trace. Defendant's calculated actions establish that both the commission and concealment of the offenses were carried out with careful planning and attention.

The Court should reject any request by the defendant for a lower sentence based on his characteristics. While defendant's history and characteristics are relevant, any favorable

characteristics are outweighed by the nature and seriousness of the offenses defendant committed. These crimes were not a momentary lapse in judgment; defendant had been teaching people to pass polygraph examinations whether they were lying or not for decades.  Moreover, many of the individuals trained by defendant were convicted sex offenders utilizing his services in order to "beat" polygraph examinations administered as part of their court-mandated Post-Conviction Sex Offender Testing.[4]   While defendant ultimately decided to plead guilty during trial, he continues to sell training materials that teach the same techniques he taught the UCs and other customers to help them lie on a polygraph and get away with it, calling into question his remorse for his crimes. The seriousness of the offenses committed by defendant as well as his continued promotion and sale of materials that teach people to "beat" the polygraph weigh against any downward variance or departure in this case.

Further, a 24 to 30 month prison sentence for defendant is essential to accomplish the relevant purposes of 18 U.S.C. § 3553(a)(2), that is, the need "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense," and to "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2).  For years, defendant used his special skills as a trained and experienced polygrapher—something he highlighted on his website and in communications with his customers—to defraud the government and amass substantial personal gain, at the cost of the public's safety and security.  Were it not for this investigation, it seems defendant would have continued to train individuals who would have otherwise been excluded from federal employment, or sent back to prison for violations of their

---

[4]   In a recorded conversation with UC1, defendant boasted, "every person who's convicted of any type of sexual offense in the United States has to take a polygraph test every six months to stay out of jail, so they're willing to you know, line up three deep to get trained to make sure they can pass the damn thing." Op. 1, Call No. 2, 10/15/12 (Gov. Exh. US101).

supervised release, among others, to pass polygraph examinations even if they were lying. The proposed punishment in this case, a term of 24 to 30 months of incarceration, fits defendant's crimes. It signals to defendant and others that such gross and calculated attempts to defraud the United States and obstruct federal criminal and background investigations will not be tolerated.

### III.   CONCLUSION

Considering the above factors, the Government respectfully requests that the Court impose a guideline sentence of 24 to 30 months of incarceration.

In Oklahoma City, Oklahoma, this 17th day of September, 2015.

> RAYMOND HULSER
> Chief, Public Integrity Section
>
> /s/ Heidi Boutros Gesch
> Heidi Boutros Gesch
> Brian K. Kidd
> Trial Attorneys
> U.S. Department of Justice
> Criminal Division, Public Integrity Section
> 1400 New York Ave., NW
> Washington, DC 20005

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing Memorandum in Aid of Sentencing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

/s/ Heidi Boutros Gesch
Heidi Boutros Gesch
Trial Attorney
