**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:14-cr-00318 |
| | ) | |
| DOUGLAS G. WILLIAMS, | ) | HON. VICKI MILES-LaGRANGE |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S**
**MOTION FOR MODIFICATION OF THE TERMS**
**OF SUPERVISED RELEASE**

The United States, by and through undersigned counsel, hereby respectfully opposes defendant Douglas G. Williams's Motion for Modification of the Terms of Supervised Release. Dkt. No. 51 ("Def.'s Mot."). Because defendant's criminal conduct was inextricably linked with his polygraph business and because defendant has repeatedly and deliberately sought to avoid knowledge of his clients' intention to lie during polygraph examinations (in order to insulate himself from criminal liability), the Court's restriction on defendant's participation in polygraph-related activity is necessary and appropriate to protect the public. Accordingly, defendant's motion should be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In November 2015, defendant was charged with two counts of mail fraud, in violation of 18 U.S.C. § 1341, and three counts of witness tampering, in violation of 18 U.S.C. § 1512(b). Defendant pleaded guilty to all five counts on the second day of trial, and on September 22, 2015, he was sentenced to 24 months of imprisonment followed by three years of supervised release.

One of the conditions of supervised release requires that defendant refrain from participation "in any form of polygraph-related activity during the period of supervision." Dkt. No. 48 at 4.

At trial, the government presented evidence that defendant operated an Internet-based business called Polygraph.com, through which he marketed and sold training materials and services that he advertised would enable clients to pass polygraph examinations "nervous or not – lying or not – no matter what!" In addition to training manuals and DVDs, defendant sold in-person, confidential, "one-on-one" polygraph countermeasures training sessions. During these sessions, defendant taught clients how to pass polygraph tests even if they were lying.

The evidence the government presented (or was prepared to present had defendant not pleaded guilty mid-trial) showed that defendant knowingly trained two federal agents, who were posing as law enforcement officers who had committed serious crimes, to pass federally-administered polygraph tests while lying about their past criminal conduct. One undercover agent ("UC"), who represented himself as a Customs and Border Protection ("CBP") Inspector under criminal investigation by the Department of Homeland Security ("DHS") for drug trafficking, told defendant that he had knowingly allowed drugs to be smuggled into the U.S. on four separate occasions in exchange for money. The other UC posed as a deputy sheriff applying for a position as a Border Patrol Agent who had engaged in a sexual act with a fourteen-year-old girl who was in his custody and had smuggled drugs into a local jail while employed as a correctional officer. Both UCs made it clear to defendant that they could not keep or obtain federal employment unless he helped them lie about their crimes during their respective polygraph examinations. Knowing of the UCs' intent to lie to federal investigators in order to get or keep federal law enforcement

positions, defendant willingly trained them how to provide false responses to polygraphers' questions and still pass.[1]

Defendant, who is still serving his prison sentence, is now asking the Court to remove the restriction on engaging in polygraph-related activities during his term of supervised release.  For the reasons discussed below, the Court should deny defendant's motion.

## II.    ARGUMENT

This Court has discretion to impose an occupational restriction as a condition of supervised release provided certain conditions are met.  Under 18 U.S.C. § 3563(b)(5), a court may require that a defendant "refrain . . . from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense . . . ." *See also* 18 U.S.C. § 3583(d).  In order to impose such a restriction, the court must find that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

U.S.S.G. § 5F1.5(a).  Subsection (b) adds a third requirement, providing that the sentencing court may only "impose the condition for the minimum time and to the minimum extent necessary to protect the public."  U.S.S.G. § 5F1.5(b); *see also United States v. Souser*, 405 F.3d 1162, 1166 (10th Cir. 2005) ("[A]n occupational restriction . . . may only be imposed if the district court finds that all three of these criteria are met.").

---

[1]        The government also presented evidence of defendant's promise to assist a woman (who was not an undercover or otherwise acting at the government's behest) seeking employment as a police officer who told defendant she planned to lie in her polygraph examination to conceal past conduct.

The Court's requirement that defendant not participate in polygraph-related activities during the period of his supervised release satisfies all three criteria. First, there is a direct relationship between defendant's profession as a polygrapher and his scheme to defraud the United States and tamper with witnesses. Indeed, defendant relied on his expertise and experience as a polygraph examiner to attract clients seeking his help to obtain or maintain federal employment, highlighting on his website that he has 35 years of experience in the field and has personally administered thousands of polygraph examinations. Similarly, during his in-person trainings, defendant relied heavily on his knowledge of polygraph instruments and techniques to give his clients the confidence to lie to polygraph examiners when truthful answers would disqualify them from federal employment. Defendant's training and experience as a polygraph examiner was integral to his criminal scheme. It was the instrument by which he attracted customers as well as the means he used to encourage and embolden his clients to lie to federal investigators.[2]

Second, there is good reason to believe that defendant "will continue to engage in unlawful conduct similar to that for which [he] was convicted," making the restriction on polygraph-related activity "reasonably necessary to protect the public." *See* U.S.S.G. § 5F1.5(a). While defendant claims that his training simply helps truthful people who are nervous pass the polygraph test, *see* Def. Mot. at 2, he clearly intends to continue to teach "methods to produce a 'truthful' chart

---

[2]     Courts have imposed occupational restrictions in other cases in which the connection between the restriction and the criminal conduct was more attenuated than it is here. *See, e.g.*, *United States v. Smith*, 445 F.3d 713, 715 (3d Cir. 2006) (affirming imposition of a supervised release restriction on any type of employment in the legal profession in which defendant would have access to personal information of clients for defendant convicted of fraudulently holding himself out as a legal consultant); *United States v. Carlson*, 406 F.3d 529, 532 (8th Cir. 2005) (affirming imposition of a supervised release restriction on working in the medical profession for former orthopedic physician's assistant convicted of fraudulently obtaining prescription medication); *United States v. Choate*, 101 F.3d 562, 566 (8th Cir. 1996) (affirming imposition of a supervised release restriction on all self-employment and noting that "[t]he district court [was] not required to pit its imagination against [defendant's] to anticipate what sort of business he could put to fraudulent use"); *United States v. Cutler*, 58 F.3d 825, 839 (2d Cir. 1995) (affirming imposition of a supervised release restriction on practicing law in a particular federal district for attorney convicted of criminal contempt).

tracing" on the polygraph instrument.  *Id.*  Methods to guarantee a truthful result on a polygraph would undoubtedly be of interest to anyone seeking to lie about or conceal information from federal investigators, and defendant's proposed disclaimer serves only to protect himself from criminal exposure by preventing those who intend to use his training to lie from telling him of their intentions.

The disclaimer, in essence, informs potential clients that defendant will assume they are telling the truth and will not tolerate being told otherwise.  *Id.* at 3 ("I am doing this training with the understanding that you are telling the truth . . . . I will not listen to any confessions or admissions of any wrong doing whatsoever.").  It echoes statements that defendant made to the UCs after it became obvious they were planning to use his training to lie to federal investigators. For example, defendant told one UC:

> I tell you: 'Look, just, I'm working under the assumption that you're telling the truth.' See, that protects me. That way I am just teaching an honest, truthful person . . . You don't have to turn around and say, 'yeah, like I told you, I'm a lying son of a b\*\*ch.' What the f\*\*k was the reason for that, unless you wanted it on record that I was knowingly teaching someone how to lie and cheat . . . ?

Op. 1, Call No. 4 (Oct. 17, 2012).   Similarly, defendant told the other UC, "[D]on't tell me anything that will disqualify you, and I can train you how to pass if you're lying you're a\*s off, so don't worry about that f\*\*\*ing bullsh\*t."  Op. 2, Call No. 3 (Feb. 7, 2013).  These comments by defendant show his willingness to take proactive steps to avoid knowledge of his clients' criminal plans.  Defendant apparently believed that by keeping himself in the dark about his clients' intentions to lie to federal investigators, he could train them without exposing himself to a risk of prosecution for participating in their unlawful activity.

Even now, while serving his sentence, defendant seems unconcerned that his future customers might use his training and techniques to lie to federal officials about disqualifying

information in order to obtain or maintain employment in sensitive national security positions. Although defendant has recognized the potential dangers of his training, stating to one of the UCs that he feared being arrested for "assisting a known suspect in terrorist activity" if he trained him, Op. 1, Call No. 4 (Oct. 17, 2012), he is eager to provide his training immediately upon release to anyone with the simple disclaimer that he is proceeding under the assumption that his customer intends to be truthful.

Finally, the restriction on polygraph-related activities for the full term of supervised release is the minimum restriction necessary to protect the public. Throughout the undercover investigation in this case, defendant blatantly disregarded public safety by helping individuals who he understood to be dangerous lie in order to obtain and maintain sensitive government positions protecting our nation's borders. In the first operation, defendant trained an agent posing as a drug smuggler to lie during a polygraph in connection with a criminal investigation in order to keep his job as a CBP Inspector. At one point, defendant even asked the UC how he knew that what he let into the country was drugs and not a dirty bomb, Op. 1, Call No. 4 (Oct. 17, 2012), showing that defendant comprehended the grave danger posed by having a corrupt inspector monitoring our borders. In the second operation, defendant trained a UC posing as a deputy sheriff who abused his power to engage in a sex act with a minor in his custody. Knowing that this individual was being polygraphed in connection with his application for a job as a Border Patrol agent—a position in which he would regularly be dealing with vulnerable people subject to his authority—defendant nevertheless taught the UC how to lie about his past criminal conduct without indicating deception on the polygraph examination. Given the defendant's extreme disregard for public safety and national security, there are no less restrictive alternatives that would adequately prevent him from helping individuals lie in order to obtain or keep sensitive government positions.

## III.     CONCLUSION

For the aforesaid reasons, the United States respectfully requests that this Court deny defendant's Motion for Modification of the Terms of Supervised Release and make findings on the record that the three conditions for imposing an occupational restriction on polygraph-related activity have been met.

Date: February 10, 2017                     Respectfully submitted,

                                            RAYMOND HULSER
                                            Chief, Public Integrity Section

                              By:    /s/ Heidi Boutros Gesch
                                     Heidi Boutros Gesch
                                     Trial Attorney
                                     U.S. Department of Justice
                                     Criminal Division, Public Integrity Section
                                     1400 New York Ave., NW
                                     Washington, DC 20005
                                     (202) 514-1412

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing United States'

Opposition to Defendant's Motion for Modification of the Terms of Supervised Release with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

parties.

<u>/s/ Heidi Boutros Gesch</u>
Heidi Boutros Gesch
Trial Attorney